The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Juan Francisco SOTO–GALLEGOS,
Defendant,

Pioneer General Insurance
Company, Appellant.

No. 96CA0960.

Colorado Court of Appeals,
Div. II.

July 10, 1997.

Rehearing Denied March 5, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John J. Fuerst, III, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

Tilly & Graves, P.C., Douglas W. Colville, Harmon S. Graves, L. Jay Labe, Denver, for Appellant.

Opinion by Judge DAVIDSON.

Surety, Pioneer General Insurance Company, appeals from the judgment of $85,000 entered against it on the forfeiture of the $100,000 bail bond it posted for the release of defendant, Juan Francisco Soto–Gallegos. We affirm.

In 1993, surety posted a bond for defendant's release on felony drug charges. In 1995, while free on the 1993 bond, defendant was arrested on new drug charges. He was temporarily jailed on these charges and later released on a second bond posted by a different surety. Later, defendant failed to appear for a scheduled court date on the 1993 charges and the 1993 bond was forfeited.

On appeal, surety asserts several arguments seeking complete exoneration or discharge from any liability on the 1993 bond. We conclude, however, that the trial court properly entered judgment against surety on the forfeiture.

## I.

Surety first contends that the trial court erred in failing to exonerate it from bond liability because defendant had been "effectively surrendered" when he was arrested and temporarily incarcerated on the 1995 charges. We disagree.

Here, although surety could have been entitled to exoneration pursuant to § 16–4–108(1)(c), C.R.S. (1986 Repl.Vol. 8A) if it had surrendered defendant into custody on the 1993 charges at any time prior to the entry of judgment, including any time while he was in custody on the 1995 charges, the record shows that surety failed to take any action to do so. The record further shows that, because defendant had been released on the second monetary bond prior to that date, his failure to appear for the court date on the 1993 charges that led to the forfeiture was not a result of being in custody on the other charges.

■ Hence, notwithstanding the state's temporary custody of defendant on the 1995 charges, he was not surrendered into custody on the 1993 charges for which that bond was posted, and he was not prevented from making the appearances required on those charges. See § 16–4–108(1)(c); People v. Goldsmith, 955 P.2d 561 (Colo.App.1997) (surety not exonerated under "surrender" provisions of § 16–4–108(1)(c) by defendant's later arrest and incarceration on separate charges); see also People v. Jaramillo, 163 Colo. 39, 428 P.2d 67 (1967) (where defendant escaped from jail and sureties had not "surrendered" him on the bond charges while he was in custody, sureties were not exonerated by his later incarceration on other charges).

## II.

Surety also contends that, by continuing the 1993 bond despite defendant's commission of new felonies, the court modified the bond agreement and materially increased the risk surety had undertaken without surety's consent, thereby entitling it to exoneration from bond liability. We do not agree.

■ Not every "event" which materially increases the risk contractually assumed by a surety operates to discharge the surety's liability on the bond. Rather, only those modifications in the conditions of the bail bond agreement that are made by the defendant and the trial court without the surety's consent and that materially increase the risk of the defendant's non-appearance have the effect of discharging the surety's contractual liability on the bond. People v. Tyler, 797 P.2d 22 (Colo.1990); People v. Bossert, 849 P.2d 920 (Colo.App.1993).

■ In analyzing this issue, we must look both to the terms of the bond agreement in question and, because the statutes relating to bail also implicitly constitute a part of the surety contract, to the pertinent statutory

provisions. *See Rodriquez v. People,* 191 Colo. 540, 554 P.2d 291 (1976). If the actions of the trial court are consistent with those contractual and statutory provisions, those actions cannot operate to discharge the surety's contractual liability on the bond, regardless of any increase in the surety's risk. *See People v. Tyler, supra; People v. Bossert, supra.*

Here, the primary condition of the bond was surety's monetary guarantee that defendant would make all required court appearances on the 1993 charges "until the final sentence or order of the Court." One of the further conditions of the bond provided that defendant "shall not commit any felony while at liberty on this bond." As noted by the People, this further condition is required in every bail bond pursuant to § 16–4–103(2), C.R.S. (1996 Cum.Supp.).

Conspicuously absent from these contractual and statutory provisions, however, is any language providing that the effect of any violation of this further condition by the defendant upon his release would be to discharge surety's obligations under the primary condition of the bond. Rather, the terms of the bond do not address this question, and § 16–4–103(2) provides only that the trial court has the authority to revoke the defendant's release, to increase the bail bond, or to change any bond conditions upon a defendant's violation of this condition. Section 16–4–103(2) further provides that only a defendant's violation of the condition concerning court appearances may subject a surety to forfeiture.

■ Surety's contention notwithstanding, these contractual and statutory provisions do not require surety's exoneration from liability upon defendant's violation of the condition against committing any further offenses, regardless of any increase in surety's risk arising from defendant's further criminal activities. To the contrary, in the absence of contractual or statutory language providing otherwise, the risk that defendant would reoffend upon release on bond and thereafter face new charges is one of the risks contractually assumed by surety in broadly undertaking to guarantee defendant's appearances in this matter until final sentencing. *See*

*People v. Bossert, supra; see also People v. Tyler, supra.*

Thus, regardless whether the risk of defendant's non-appearance increased as a result of subsequent events, we perceive no modification to the terms of the bond agreement by the trial court's actions here in continuing the bond. Rather, because the trial court's actions were not inconsistent with the terms of the bond, these circumstances provide no contractual basis for discharging surety's obligations under the primary condition of the bond. *See People v. Tyler, supra; People v. Bossert, supra.*

### III.

■ Section 16–4–109(3), C.R.S. (1986 Repl.Vol. 8A) authorizes a trial court, in its discretion, to set aside a bail bond forfeiture prior to entry of judgment upon such conditions as the court may impose "if it appears that justice so requires." Surety argues, apparently pursuant to that provision, that, under the circumstances here, the trial court had a duty to notify it of defendant's subsequent criminal activities and that the trial court's failure to do so required discharge of surety's liability on the bond. Again, we disagree.

First, there is nothing in the terms of the bond agreement which imposes such a duty on the trial court.

■ Nor is there any statutory requirement that the trial court notify a surety of the possibility of release on bond for new charges. Under § 16–4–105(1)(p), C.R.S. (1986 Repl.Vol. 8A), a surety must be notified and afforded an opportunity to surrender a defendant who is on release under an existing bail bond on felony charges before that person may be released *on personal recognizance* on any additional charges. *See People v. Anderson,* 789 P.2d 1115 (Colo.App.1990); *see also* § 16–4–105(1)(m), C.R.S. (1986 Repl. Vol. 8A) (requiring consent of district attorney also before any release on personal recognizance under such circumstances).

In contrast, neither § 16–4–105(1)(p) nor any other provision requires notification when, as here, a defendant is released only

upon posting an additional surety bond. And, we may not extend the statutory notification requirement of § 16–4–105(1)(p) beyond its terms. *See People v. Anderson, supra* (§ 16–4–105(1)(p) is designed to apply only when a defendant is released on a personal recognizance bond); *see also Allstate Insurance Co. v. Smith,* 902 P.2d 1386 (Colo. 1995) (statute should be construed as written because the court presumes the General Assembly meant what it clearly said); *Digital Equipment Corp. v. Industrial Claim Appeals Office,* 894 P.2d 54 (Colo.App.1995) (court is not at liberty to read non-existent terms into the plain language of a statute).

Accordingly, the judgment is affirmed.

PLANK and BRIGGS, JJ., concur.